14-1740

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Manuela Holmes f/k/a Manuela Moore,

Plaintiff - Appellant,

v.

Morgan H. Moore,

Defendant - Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

Brian C. Gambrell
Hamilton & Associates, LLC
1122 Lady Street, Suite 850
Columbia, SC 29201
(803) 779-0700

Counsel for Manuela Holmes

## TABLE OF AUTHORITIES

*United States Supreme Court Cases:*

Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) ............................................... 8, 9, 10, 11, 13

Marshall v. Marshall, 547 U.S. 293, 299 (2006) ................................................................. 9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) ............ 8


*United States Court of Appeals for the Fourth Circuit Cases:*

Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.,
492 F.3d 484, 494 (4th Cir. 2007) .......................................................................... 13

Cole v. Cole, 633 F.2d 1083, 1087-89 (4th Cir. 1980) ................................................. 8, 9, 11, 13

Geo Plastics v. Beacon Dev. Co., 434 F. App'x 256, 262 (4th Cir. 2011) .......................... 12

Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283, 292 (4th Cir. 1998) .............................. 13

John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28, 29 (4th Cir. 1995) ................ 14

Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996) ............................................................ 13, 14

Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2008) ........................................................ 8

Raftery v. Scott, 756 F.2d 335, 338 (4th Cir. 1985) ............................................................ 9, 13

Tenneco Chems., Inc. William T. Burnett & Co., 691 F.2d 658, 665 (4th Cir. 1982) ......... 14

Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 596 (4th Cir. 2004) ... 13

Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007) ......................................................... 13, 14

*District Court of South Carolina Cases:*

Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.,
820 F.Supp.2d 703, 707 (D.S.C. 2007) ................................................ 13

Brown v. Green Tree Servs., LLC, 585 F.Supp.2d 770, 777 (D.S.C. 2008) ......................... 15

Fung Lin Wah Enters. Ltd. v. E. Bay Imp. Co., 465 F.Supp.2d 536, 542-43 (D.S.C. 2006) .. 13

Harbour Town Yacht Club Boat Slip Owners' Ass'n v. Safe Berth Mgmt., Inc.,
421 F.Supp.2d 908, 911 (D.S.C. 2006) ................................................ 13

Sadighi v. Daghighfekr, 66 F.Supp.2d 752, 760 (D.S.C. 1999) ............................... 13

Taylor v. Cummins Atlantic, Inc., 852 F.Supp.2d 1279, 1286 (D.S.C. 1994) ....................... 13


*South Carolina Supreme Court Cases:*

Burwell v. S.C. Nat'l. Bank, 340 S.E.2d 786, 789 (S.C. 1986) ............................... 15

Gilliland v. Elmwood Props., 391 S.E.2d 577, 581 (S.C. 1990) ............................... 15

Mathis v. Brown & Brown of S.C., 698 S.E.2d 773, 778 (S.C. 2010) ................................ 14

Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 (S.C. 2001) ............................... 15

Plum Creek Dev. Co. v. City of Conway, 512 S.E.2d 106, 109 (S.C. 1999) ....................... 12

Pruitt v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n,
540 S.E.2d 843, 845 (S.C. 2001) ................................................ 12

RIM Assocs. v. Blackwell, 597 S.E.2d 152, 159-160 (S.C. 2004) ....................... 12

Sub-Zero Freezer Co. v. R.J. Clarkson Co., 417 S.E.2d 569, 571 (S.C. 1992) ................... 12

W. T. Ferguson Lumber Co. v. Elliott, 172 S.E. 616, 618 (S.C. 1934) ................................ 12

*South Carolina Court of Appeals Cases:*

Gaffney v. Gaffney, 736 S.E.2d 683, 686 (S.C. Ct. App. 2012) ............................................. 12

State Mut. Ins. Co. v. Ard, 730 S.E.2d 912, 914 (S.C. Ct. App. 2012) ................................. 12

U.S. Leasing Corp. v. Janicare, Inc., 364 S.E.2d 202, 205 (S.C. Ct. App. 1988) ................. 15

Wilson v. Landstrom, 315 S.E.2d 130, 134 (S.C. Ct. App. 1984) ......................................... 15


*Cases From Other Jurisdictions:*

Catz v. Chalker, 142 F.3d 279, 292 (6th Cir. 1998) ............................................................. 11

Coles v. Granville, 448 F.3d 853, 859 n. 1 (6th Cir. 2006) ................................................... 11

Hildebrand v. Lewis, 281 F.Supp.2d 837, 843 (E.D. Va. 2003) ............................................ 11

Ingram v. Hayes, 866 F.2d 368, 371 (11th Cir. 1988) ........................................................... 9

Lannan v. Maul, 979 F.2d 627, 631 (8th Cir. 1992) ............................................................. 10

Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 244 (3rd Cir. 2008) ............. 10

McKnight v. Middleton, 699 F.Supp.2d 507, 519 (E.D.N.Y. 2010),
aff'd, 434 F.App'x 32 (2nd Cir. 2011) ...................................................................................... 9

McLaughlin v. Cotner, 193 F.3d 410 (6th Cir. 1999) ...................................................... 10, 11

Norton v. McOsker, 407 F.3d 501 (1st Cir. 2005) ................................................................ 10


*Other Sources:*

28 U.S.C. § 1332 ................................................................................................................... 1, 3

28 U.S.C. § 1291 ...................................................................................................................... 1

Fed.R.Civ.P. 56 ..................................................................................................................... 1, 8

FRAP 3 ...................................................................................................................................... 1

iii

## JURISDICTIONAL STATEMENT

Appellant's complaint asserted causes of action for breach of contract, and jurisdiction of Appellant's case was based on 28 U.S.C. § 1332.

The District Court's opinion and order and the judgment filed in this action on June 23, 2014 were pursuant to Fed.R.Civ.P. 56 and, therefore, were a final order and judgment. Thus, appellate jurisdiction in this case exists pursuant to 28 U.S.C. § 1291. Appellant timely filed a notice of appeal from this order and judgment on July 21, 2014, pursuant to FRAP 3.

Accordingly, this appeal is from a final order and judgment dismissing Appellant's claims thereby providing this Court with jurisdiction for this appeal.

## STATEMENT OF THE ISSUES

I.    The Trial Court erred when it granted summary judgment by applying the domestic relations exception to the instant case involving the interpretation of an unambiguous settlement agreement.

II.   The Trial Court erred when it refused to enforce the parties' settlement agreement as a contract.

III.  The Trial Court erred when it failed to grant summary judgment to Appellant when Appellee only asserted issue of law.

## STATEMENT OF THE CASE

Appellant instituted this action on May 8, 2013 asserting that Appellee breached a settlement agreement by failing to pay half of his military retirement and asserting jurisdiction in the District Court pursuant to diversity under 28 U.S.C. § 1332. Appellee answered denying the claims and asserting various defenses, *inter alia,* lack of subject-matter jurisdiction and *res judicata*. (JA 12-17.)

After the close of discovery, Appellee filed a motion for summary judgment. (JA 19.) Appellant Appellee by agreeing there no issues of material fact, but that judgment should entered on behalf of Appellant. (JA 45-68.)

The District Court issued an Order and Opinion on June 23, 2014 granting summary judgment to Appellee on the grounds Appellant's claims were barred by the domestic relations exception to diversity jurisdiction. (JA 85-90.) The District Court rejected Appellee's argument that the contract was invalid because it was not expressly adopted by the South Carolina Family Court. (JA 88, Footnote 1.) Appellant filed her notice of appeal on July 21, 2014. (JA 91.)

## STATEMENT OF THE FACTS

Appellee joined the United States Army in July 1982. (JA 69.) Four years later, Appellant and Appellee married on September 19, 1986. (JA 12, 32-33.) The two were married for over a decade before deciding to begin divorce proceedings, and upon this decision, the parties separated in October 1997. (JA 12, 32-33.) In total, Appellant and Appellee were married for 147 months, during which time, Appellee continued to serve in the United States Army and accrue time towards military retirement. (JA 32-33, 69.)

During the parties' separation, they negotiated and entered into a *Separation and Property Settlement Agreement* ("Settlement Agreement"), performed independently from court proceedings on January 26, 1999. (JA 34-42.) Appellee represented to the Court by and through his Answer the Settlement Agreement resolved all ancillary issues and determined how to divide marital assets. (JA 79.) The Settlement Agreement also formed the basis of the parties' divorce and Appellee enjoyed the benefits of the bargain. (JA 32-33.)

The Settlement Agreement expressly states that military retirement pay is an asset the parties acquired during marriage, and therefore, is marital property. (JA 35-36, 70-73.) The parties determined and expressly delineated the formula by which Appellant would receive her share of this marital property upon Appellee's retirement from the United States Army. (JA 35-36, 70-73.) Additionally, the parties specified that Appellant would "share in any cost-of-living adjustments that accrue to the retired pay that is divided." (JA 35-36, 70-73.) Performance of Appellee's obligation to pay Appellant her share of the retirement was dependent upon two requirements: (1) Appellee "completes [the] sufficient number of years of creditable military service to qualify" for retirement; and (2) Appellee "receives military retired pay." (JA 35-36,

70-73.)  Accordingly, Appellant was not to receive the retirement, nor was Appellee under an obligation to pay any portion of the military retirement, until Appellee actually retired from the United States Army.  Upon retirement from the United States Army, Appellee was to "pay [Appellant] her share of this marital property . . . ."  (JA 35-36)

The parties did not merge the Settlement Agreement into the family court's order. Instead, the Settlement Agreement by its own terms remained a contract, rather than transforming into a decree of the court.  Article XVIII of the Settlement Agreement specifically states:

> Each party agrees that the provisions of this agreement shall be submitted to any court in which either may seek a judgment or decree with specificity as the court shall deem permissible and by reference as may be appropriate under law and under the rules of the court. However, notwithstanding such incorporation, the obligations and covenants of this agreement shall survive any decree or judgment of separation or divorce and shall not merge therein, and this agreement may be enforced independently of such decree or judgment.

(JA 41.)

The parties signed the Settlement Agreement under seal, with Appellant on January 19, 1999, and Appellee on January 26, 1999.  (JA 42.) (Settlement Agreement 9 ¶¶ 7–8, 11–13, 17–19.)  The signing of the Settlement Agreement represented the conclusion of the parties' negotiations and the parties' mutual intent to be bound by all terms of the Settlement Agreement. (JA 41.)  The Settlement Agreement contains a merger clause in which both parties agreed the Settlement Agreement contained the parties' entire agreement. (JA 41.)

On June 1, 2011, Appellee retired from the United States Army.  (JA 14.) Appellee retired as an E-8 after honorably serving 28 years and 7 months, which is 343 months.  (JA 69, 74-75.)  Appellee's monthly pension payment for his retirement is $3,085.59.  (JA 74-75.) Appellee admits that he has not compensated Appellant in any manner since his retirement from

5

the United States Army on June 1, 2011. (JA 70-73.) Appellee is in breach of the Settlement Agreement by this failure. (JA 35-36.) Appellee has not offered a meritorious defense to Appellant's claim of breach of contract. (JA 12-17.) Appellee has only asserted the Settlement Agreement is not a contract; however, he has not contested any specific portion of the Settlement Agreement as being invalid. (JA 18-28, 70-73.) Appellee has also maintained the agreement contains provisions that he thought would be removed. (JA 43-44.)

After the close of discovery, Appellee filed a motion for summary judgment on the claims against them. (JA 18.) The District Court issued an Order and Opinion on June 23, 2014 granting summary judgment on the issue of the domestic relations exception to diversity jurisdiction. Appellant filed her notice of appeal on July 21, 2014. (JA 91.)

## SUMMARY OF ARGUMENT

The District Court erred in granting Appellee's motion for summary judgment on Appellant's claim because of domestic relations exception.

### Issue I

Appellant's claims are not barred by the domestic relations exception. The domestic relations exception has been defined as a "narrow" exemption intended to prevent district courts from issuing divorce, alimony, and child custody decrees. The District Court erred because the instant action does not fit any of these three criteria.

### Issue II

The District Court erred when it applied the domestic relations exception to the instant action because the settlement agreement is a contract by its own terms and under South Carolina law. The defenses raised by Appellee are purely contractual in nature and are routinely applied by the District Court in all contract cases based on diversity.

### Issue III

The District Court should have granted summary judgment instead to Appellant. There were no remaining issues of fact, and the Appellee's defenses were barred by judicial estoppel.

# ARGUMENT

## Standard of Review

An appellate court reviews the district court's grant of summary judgment *de novo,* applying the same legal standards as the district court and viewing the facts and inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986); *Pueschel v. Peters,* 577 F.3d 558, 563 (4th Cir. 2008).  Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## Discussion of Issues

I.  **The District Court erred when it granted summary judgment in the instant action by broadly interpreting and applying the domestic relations exception to diversity jurisdiction.**

The District Court erred when it broadly applied the domestic relations exception to the instant action. The domestic relations exception "divests the federal courts of the power to issue divorce, alimony, and child custody decrees."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  The domestic relations exception does not extend beyond the scope of these three issues. *Id.* at 704.  The Supreme Court reasoned that it "makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees." *Id* at 703–04. If the case does "not require the court either to adjust family status or to establish duties under family-relations law or to determine whether or not such duties had been breached" then the domestic relations exception likely does not limit a federal court's jurisdiction. *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980). However, the

Supreme Court acknowledged the *Ankenbrandt* decision "reined in the 'domestic relations exception.'" *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). A district court may not simply avoid all diversity cases having intrafamily aspects under the guise of the domestic relations exception. Rather it must consider "the exact nature of the rights asserted or of the breaches alleged" *Raftery v. Scott*, 756 F.2d 335, 338 (4th Cir. 1985). *Cole v. Cole*, 633 F.2d at 1087-89. Federal courts do have jurisdiction to decide tort, contract or civil rights questions in cases arising out of a domestic relations context when the underlying domestic relations issues are not in dispute. See e.g., *Ingram v. Hayes*, 866 F.2d 368, 371 (11th Cir. 1988). A suit that seeks only money damages and not the issuance or modification of a child custody decree rarely invokes the domestic relations exception. *McKnight v. Middleton*, 699 F.Supp.2d 507, 519 (E.D.N.Y. 2010), *aff'd*, 434 F.App'x 32 (2nd Cir. 2011).

*Ankenbrandt* and Circuit Court decisions have made it clear that the exception is very narrow despite the breadth of the phrase 'domestic relations exception' and the potential reach of the exception's aim. The Fourth Circuit has been very specific that the domestic relations exception is very narrow. In *Cole*, the Fourth Circuit held a former husband's action against former wife and police officers for alleged malicious prosecution, abuse of process, arson, conversion, and conspiracy was not barred by the domestic relations exception. The Court in *Cole* held:

> Even though the parties have been marriage partners, where alleged breaches (whether tortious or contractual in nature) are of a duty which does not arise **solely** from family relations law, a federal district court may not deny jurisdiction simply on the grounds of the supposed etiology of the emotions underlying either the alleged breach by the defendant or the decision by the plaintiff to bring suit.

*Cole*, 633 F.2d at 1088 (Emphasis added).

9

In *Matusow v. Trans-County Title Agency, LLC*, 545 F.3d 241, 244 (3rd Cir. 2008), the Third Circuit held the domestic relations exception did not apply to the enforcement of a property separation agreement "[b]ecause [the plaintiff] does not seek modification of the judgment between her and [the defendant], the fact that the [marital property] is both subject to the [divorce] Agreement and related to the present suit does not divest the federal courts of diversity jurisdiction." The situation in *Matusow* is the exact same issue in the instant action.

The First Circuit held a suit between a spurned paramour who sued her former lover for tort and contract damages was not barred by the domestic relations exception because the matter did not fit the narrow areas enumerated by *Ankebrandt. Norton v. McOsker*, 407 F.3d 501 (1st Cir. 2005). In *Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir. 1992), the Eighth Circuit reversed the grant of summary judgment by the lower court under the domestic relations exception in a matter involving the designation of a third party beneficiary of a life insurance policy that was involved in an ongoing family court matter. The Eighth Circuit emphasized the domestic relations exception, as articulated by the Supreme Court in *Ankenbrandt*, is a narrow one "that does not encompass collateral issues, such as the alleged breach of contract presented here." *Id.*

The District Court cited *McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999) on the basis to dismiss the instant appeal. However, that case is easily distinguishable. The family court in *MicLaughlin* incorporated the settlement agreement into a final order. That did not occur in the instant action. Instead, Article XVIII of the Settlement Agreement contains a specific provision that reserves the right to enforce the Settlement Agreement as a contract. (JA 41.) The court in *McLaughlin* was also persuaded to apply the domestic relations exception given that a parallel action regarding the sale of the marital residence was then pending in state court. No such parallel state action exists in the instant action. In a case that involved no parallel action pending

10

in state court, the Sixth Circuit held, "We take [the Supreme Court in *Ankenbrandt*] to mean, plainly enough, that the domestic relations exception applies only where a plaintiff positively sues in federal court for divorce, alimony, or child custody." *Catz v. Chalker*, 142 F.3d 279, 292 (6th Cir. 1998), *overruled on other grounds as stated in Coles v. Granville*, 448 F.3d 853, 859 n. 1 (6th Cir. 2006).

In another case similar to *McLaughlin* involving no parallel action in state court, the Eastern District in Virginia, referencing *Cole*, found that "[the plaintiff's] claims do not trigger application of the domestic relations exception because they are based on Virginia corporate law and do not seek issuance or modification of a divorce or alimony decree." *Hildebrand v. Lewis*, 281 F.Supp.2d 837, 843 (E.D.Va. 2003). The court emphasized that just because "the parties' ownership in [the disputed property] . . . originated in a separation agreement, later incorporated in a state-issued divorce decree, [that] does not remove this case from the realm of federal diversity jurisdiction." *Id.* The court concluded that "because [the plaintiff] does not seek the issuance or modification of a divorce or alimony decree . . . [the defendant's] motion to dismiss based on the domestic relations exception must be denied. . . . To hold otherwise would essentially strip federal courts of diversity jurisdiction any time a contract or decree with family ties is required to be referenced or interpreted in any respect. . ." *Id.*

The instant action does not involve any substantive issues involving domestic relations law which would impact the marital status of either the Appellant or Appellee. Appellant and Appellee have been divorced since 1999. Appellant's action did not seek to modify that divorce order. Neither is alimony or child custody at issue. There would no change in marital status, alimony, child support, or visitation rights if Appellant's action is successful. As will be discussed, *infra*, the defenses asserted by Appellee to the action are the kind of contractual

11

defenses which are routinely interposed. This case can be decided without resorting to domestic law. All Appellant has sought is the enforcement of a contract right. This action is really no different from the multitude of contract cases district courts hear and decide every day.

**II.    The District Court erred when it refused to enforce the parties' settlement agreement as a contract.**

The breach of contract action brought by the Plaintiff arose from a divorce settlement, and South Carolina jurisprudence establishes that settlement agreements are contracts. "The interpretation of [marital settlement agreements] is a matter of contract law." *Gaffney v. Gaffney*, 736 S.E.2d 683, 686 (S.C. Ct. App. 2012) (quoting *State Mut. Ins. Co. v. Ard*, 730 S.E.2d 912, 914 (S.C. Ct. App. 2012)). The breach of a settlement agreement gives rise to a new cause of action sounding in contract. *Pruitt v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n*, 540 S.E.2d 843, 845 (S.C. 2001). "After a valid compromise agreement has been entered into, any subsequent remedy of the parties with reference to the matters included therein must be based on the agreement." *Sub-Zero Freezer Co. v. R.J. Clarkson Co.,* 417 S.E.2d 569, 571 (S.C. 1992); *W. T. Ferguson Lumber Co. v. Elliott*, 172 S.E. 616, 618 (S.C. 1934). It does not revive old claims that were extinguished by the settlement agreement, and a signed settlement agreement acts as *res judicata* for all future claims based upon the same set of facts. *RIM Assocs. v. Blackwell*, 597 S.E.2d 152, 159-160 (S.C. 2004); *Plum Creek Dev. Co. v. City of Conway,* 512 S.E.2d 106, 109 (S.C. 1999). Those past obligations are considered "satisfied."

The instant action also does not involve any unique or unfamiliar areas of law which necessitates a federal court abstain or decline to exercise jurisdiction. The exact nature of the instant action involves the application of South Carolina contract law to an unambiguous contract. The Fourth Circuit and/or the District Courts of South Carolina have been called upon frequently to apply South Carolina contract law. *Geo Plastics v. Beacon Dev. Co.*, 434 F. App'x

12

256, 262 (4th Cir. 2011); *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492

F.3d 484, 494 (4th Cir. 2007); *Boldt Co. v. Thomason Elec. & Am. Contractors Indem. Co.*, 820

F.Supp.2d 703, 707 (D.S.C. 2007); *Fung Lin Wah Enters. Ltd. v. E. Bay Imp. Co.*, 465 F.Supp.2d

536, 542–43 (D.S.C. 2006); *Taylor v. Cummins Atlantic, Inc.*, 852 F.Supp.2d 1279, 1286 (D.S.C.

1994).

The Circuit and District Courts have also interpreted general and South Carolina

contractual defenses and related law. Meeting of the minds: *Sadighi v. Daghighfekr*, 66 F.Supp.

2d 752, 760 (D.S.C. 1999). Judicial estoppel: *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283,

292 (4th Cir. 1998); *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). Parol evidence rule:

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 596 (4th Cir. 2004); *Harbour*

*Town Yacht Club Boat Slip Owners' Ass'n v. Safe Berth Mgmt., Inc.*, 421 F.Supp.2d 908, 911

(D.S.C. 2006).

Therefore, the District Court was not required to tread into the thorny family issues

precluded by *Ankebrandt,* but instead enforce an unambiguous contract as Federal courts have

done countless times before.   The District Court when it refused to exercise the jurisdiction this

Court has said countless times over disputes between former spouses that do not involve

"divorce, child custody, or alimony." *Raftery, supra; Cole; supra.*

### III.    The District Court erred when it failed to grant summary judgment to Appellant when Appellee only asserted issues of law.

The District Court erred when it failed to grant summary judgment in favor of Appellant

because Appellee's defenses are barred by judicial estoppel and the parol evidence rule. Judicial

estoppel is a principle developed to prevent a party from taking a position in a judicial

proceeding that is inconsistent with a stance previously taken in court. *Zinkand v. Brown*, 478

13

F.3d 634, 638 (4th Cir. 2007); *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995). Three elements must be satisfied before judicial estoppel will be applied. "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation." *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). The position at issue must be one of fact as opposed to one of law or legal theory. *Id.* "Second, the prior inconsistent position must have been accepted by the court." *Id.* Lastly, the party against whom judicial estoppel is to be applied must have "intentionally misled the court to gain unfair advantage." *Tenneco Chems., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982). This bad faith requirement is the "determinative factor." *John S. Clark Co.*, 65 F.3d at 29.

Judicial estoppel clearly precludes any argument that Appellee did not consent to the Settlement Agreement. Appellee filed a responsive pleading in the first action wherein he specifically represented to the family court he had resolved all issues as set forth in the Settlement Agreement. (JA 43.) Thus, his new position that the Settlement Agreement did not reflect his agreement is wholly inconsistent with the position that he took in the family court litigation. Appellee's consent to both the Settlement Agreement and the Court's conduct of a final hearing was accepted by the Court in her final order. (JA 32-33.)

"[I]n order for a contract to be valid and enforceable, the parties must have had a meeting of the minds." *Mathis v. Brown & Brown of S.C.*, 698 S.E.2d 773, 778 (S.C. 2010). By way of an affidavit, Appellee attempted to introduce parol evidence to rebut the meeting of the minds that occurred prior to the signing of the Settlement Agreement. (JA 43.) In Appellee's affidavit, he states that the Settlement Agreement "as signed was not a full recitation of the agreement between [Appellant] and me in regards to the division of our property, including my

14

retirement" and that it was his "understanding that the portion of the [Settlement Agreement] which discussed the division of [his] retirement would be stricken." (JA 43.)

This argument is barred by South Carolina contractual law and the parol evidence rule. A party to a contract has a duty to read the contract and learn its contents before signing it. *Burwell v. S.C. Nat'l. Bank,* 340 S.E.2d 786, 789 (S.C. 1986); *Brown v. Green Tree Servs., LLC,* 585 F.Supp.2d 770, 777 (D.S.C. 2008). "A person who can read is bound to read an agreement before signing it." *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 365 (S.C. 2001). Contracts would be meaningless if a party can escape from the terms by claiming they did not read it. The agreement that Appellee signed contained the provision he is now attempting to claim (15 years later) that he did not agree to perform.

The parol evidence rule also prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument. *Gilliland v. Elmwood Props.*, 391 S.E.2d 577, 581 (S.C. 1990). The parol evidence rule is particularly applicable where the written instrument contains a merger or integration clause. *U.S. Leasing Corp. v. Janicare, Inc.*, 364 S.E.2d 202, 205 (S.C. Ct. App. 1988). "A merger clause expresses the intention of the parties to treat the writing as a complete integration of their agreement." *Wilson v. Landstrom*, 315 S.E.2d 130, 134 (S.C. Ct. App. 1984) "The terms of a completely integrated agreement cannot be varied or contradicted by parol evidence of prior or contemporaneous agreements not included in the writing." *Id.*

After fifteen years, Appellee now states that he never intended to sign the Settlement Agreement with the terms that it contained. His version of the Settlement Agreement is identical to the version that Appellant has in her possession. Additionally, he signed the Settlement

Agreement under seal. His signature on the Settlement Agreement is notarized, and he reviewed and signed the Settlement Agreement one week prior to Appellant. Moreover, there is a merger clause on the signature page of the Settlement Agreement which states:

> Article XXI: Entire Understanding: This agreement contains the entire understanding of the parties who hereby acknowledge that there have been and are no representations, warranties, covenants or undertakings other than those expressly set forth herein. The parties agree that a memorandum of this agreement shall be executed upon the signing hereof and the same may be filed in the Office of the appropriate County Clerk.

(JA 42.)

Appellee followed up his signature on the Settlement Agreement by filing an Answer which also acknowledged the Settlement Agreement "resolved all other issues of the marriage (by way of a Separation Agreement)." (JA 79.) Clearly, Appellee intended the signing and execution of the Settlement Agreement as the manifestation of understanding, approval, and acceptance of the Settlement Agreement as the terms of the division of the parties' marital assets, to include the military retirement. Appellee did not attend the Final Hearing of the divorce. Appellee clearly demonstrated he intended to be bound by the terms of the Settlement Agreement, and that a meeting of the minds did occur when Appellee and Appellant signed and executed the Settlement Agreement.

After disposing of these legal defenses, the District Court should have entered Summary Judgment on behalf of Appellant. Appellee has already claimed there were no issues of material fact.

## CONCLUSION

The lower court should be reversed and this action remanded for entry of judgment on Appellant's Breach of Contract claim.

16

Respectfully submitted,

HAMILTON & ASSOCIATES, LLC

 s/ Brian C. Gambrell
HENRY L. HAMILTON (FED. I.D. # 6130)
BRIAN C. GAMBRELL (FED. I.D. #7632)
1122 Lady Street, Suite 850
Columbia, South Carolina 29201
*Telephone* (803) 779-0700
Henry.Hamilton@hankhamilton.com
Brian.Gambrell@hankhamilton.com

ATTORNEYS FOR APPELLANT

Columbia, South Carolina
September 10, 2012

17